1
2
3
4
5
6                    IN THE UNITED STATES DISTRICT COURT
7                 FOR THE NORTHERN DISTRICT OF CALIFORNIA
8
9       STEVEN J. KRUKOW,                    )
                                             )
10                   Petitioner,             )       No. C 09-5449 CRB (PR)
                                             )
11          vs.                              )       ORDER DENYING  PETITION
                                             )       FOR A WRIT OF HABEAS
12      DERRAL G. ADAMS, Warden,             )       CORPUS
                                             )
13                   Respondent.             )
        _____     )
14
15          Petitioner seeks a writ of habeas corpus under 28 U.S.C. § 2254
16   challenging a conviction and sentence from the Sonoma County Superior Court.
17   For the reasons set forth below, a writ of habeas corpus will be denied.
18                        **STATEMENT OF THE CASE**
19          On May 10, 2007, a jury found Petitioner guilty of the murder of his
20   mother Doris Krukow (Cal. Pen. Code § 187(a)), elder abuse (§ 368(b)(1)) and
21   arson of an inhabited structure (§ 451(b)).  On June 28, 2007, the court sentenced
22   Petitioner to a prison term of 20 years to life.  On the same day, Petitioner filed
23   an appeal in the California Court of Appeal.
24          On October 17, 2008, while the appeal was still pending, Petitioner filed a
25   petition for writ of habeas corpus in the California Court of Appeal.  On February
26   27, 2009, the court of appeal denied Petitioner's appeal and petition for writ of
27   habeas corpus.  On March 16, 2009, Petitioner filed a petition for rehearing in
28   both cases, but both petitions were denied on March 25, 2009.

On March 31, 2009, Petitioner filed a petition for review and a petition for writ of habeas corpus in the Supreme Court of California.  Both petitions were denied on June 10, 2009.

On November 17, 2009, Petitioner filed the instant federal petition for a writ of habeas corpus under § 2254.  Per order filed on March 23, 2010, the court found that the petition appeared to state cognizable claims under § 2254, when liberally construed, and ordered respondent to show cause why a writ of habeas corpus should not be granted.  Respondent filed an answer to the order to show cause and Petitioner filed a  traverse.

## STATEMENT OF THE FACTS

The California Court of Appeal summarized the facts of the case as follows:

> In June 2006, appellant, then 46 years old, was living with his mother, Doris Krukow, at her house in Santa Rosa. At that time, Doris Krukow was 72 years of age. Krukow had moved back to his mother's house in 2001 to care for his ailing father, who died in August 2002.

> *The Neighbors' Testimony*

> At trial, a number of the Krukows' neighbors testified that they had had problems with him. The problems began in either late 2001 or early to mid-2002 and continued through the summer of 2006. Although the neighbors testified to the existence of problems with Krukow, in accordance with a pretrial ruling, their testimony provided no specifics as to the nature of the problems and did not describe any particular incidents. One of the neighbors testified that she had discussed these problems with Doris Krukow. A friend who had known Mrs. Krukow for 40 years testified that in the early spring and summer of 2006, Doris Krukow "was very upset and very concerned about her relationship with her son, and she wanted him to leave." Doris Krukow spoke to her friend about her concerns on more than one occasion, and they discussed the matter quite often.

> Beyond the bare fact that there were problems between Krukow and his neighbors, the only other testimony on this point was that, on June 20, 2006, a neighbor called the police because of a problem he was having with Krukow. On that occasion, the police responded and spoke with both appellant and his mother. One of the responding officers testified that the police were called because "there was a concern regarding a neighborhood dispute amongst the neighbors." The

2

officer told Krukow the neighbors "w[oul]d be keeping an eye on him" and testified that he told appellant that he would also be "keeping an eye on him through extra patrols to see if I can diffuse the neighborhood dispute." The officer described Krukow as cooperative. Nevertheless, the problems with the complaining neighbor continued after the visit from the police.

### The Events of July 21 and 22, 2006

In the late afternoon of July 21, 2006, neighbor Scott Jann saw Krukow riding his bicycle toward his mother's house. Krukow was wearing a backpack. That same day, another neighbor, Diana Nielsen, saw Krukow on his bicycle heading back toward his home after 5:00 p.m. She also testified that he was wearing a backpack. At about 2:30 p.m., Krukow's neighbor John McNulty witnessed Krukow riding his bicycle and carrying a brown bag in his hands. McNulty saw Krukow again between 5:00 and 6:00 p.m., and appellant "just stare[d] [McNulty] down." A fourth neighbor, Martin Kennedy, saw Krukow riding his bicycle home at about 7:30 p.m. on July 21, 2006.

Shortly after 4:00 a.m. on July 22, 2006, Santa Rosa Fire Department personnel received a report of a house fire. They eventually determined that smoke was coming from the attic vents of the Krukow house and responded to that location. Firefighters entered the house through the front door and went into the living room. On a couch, they discovered a dead, incinerated body. The body was so badly burned that the victim's gender could not be determined. Police later learned that the body was that of Doris Krukow. A police evidence technician observed that the victim had suffered an injury to her forehead and that her skull was cracked in several places.

### The Autopsy of the Victim

A later autopsy showed Mrs. Krukow had sustained blunt force head injuries and a depressed skull fracture to her right forehead. Dr. Kelly Arthur, a forensic pathologist, performed the autopsy and opined that these injuries had caused the victim's death. According to Dr. Arthur, Mrs. Krukow died minutes after suffering the injuries and probably died unconscious. The victim also had many other fractures to the bones and cartilage on the top of her head and also had bruising to her brain tissue. Dr. Arthur testified that "significant force" would have been required to cause the head injuries, but she could not determine what type of object had caused them. She stated that they could have been caused by a single blow from a large, heavy object or by multiple blows from a smaller object.

Dr. Arthur examined a green footlocker found in Krukow's bedroom and opined that it was large enough to have caused Doris Krukow's injuries. Although Dr. Arthur testified that it was "possible" the victim's injuries could have been caused by being struck with the footlocker, she did not think it a "probable" or "likely" cause. Asked whether Mrs. Krukow's injuries were consistent with having been

3

struck by a footlocker, Dr. Arthur responded, "It depends again on how the footlocker is wielded. If it is thrown forcibly or dropped off of a balcony, that it traveled a long ways to develop enough velocity, it may cause these injuries. From a fall from a matter of a few feet or a foot, I wouldn't expect these injuries unless her head was buttressed against something in order to absorb all the energy of the impact. I would not expect these injuries, given that scenario." Dr. Arthur also testified that she would expect that there would be "trace evidence" such as blood, hair, tissue, or dandruff on the object that caused Mrs. Krukow's injuries.

Dr. Arthur testified that approximately 55 percent of Mrs. Krukow's body had been burned, with the most extensive burns on her front and upper body. The victim had curlers in her hair that had partially melted to her scalp. The fire began after Mrs. Krukow was already dead, and the burn injuries were consistent with the victim being seated when the fire occurred.

*Fire Investigation*

A fire investigation revealed that at least five separate gasoline fires had been set in the victim' house. The largest of the fires had been set in the living room where the victim's body was found. The burn pattern on top of the carpet indicated the gasoline had been splashed or poured onto the carpet. Firefighters discovered a melted gas can on the living room floor some three to five feet from Mrs. Krukow's body, and they believed the gas can was related to the starting of the fire. Other fires had been set in different parts of the house, including in appellant's bedroom. The investigators concluded the fires had been set intentionally using gasoline and an open flame. A fire inspector estimated that the fires had been set between approximately midnight and 2:00 a.m.

In Krukow's bedroom, investigators found a gas can spout, a Bic lighter, burnt clothing, four footlockers, and several guns and ammunition. In a trash can in that room, they found a receipt from Kragen Auto Parts for the purchase of a plastic gasoline can. A cashier from Kragen Auto Parts testified that on July 21, 2006, at approximately 4:56 p.m., he sold a plastic gas can to Krukow and gave the latter a receipt for the sale.

*Krukow's Arrest*

A bus driver for the Mendocino Transit Authority recalled seeing Krukow on his bus travelling from Santa Rosa to Fort Bragg in Mendocino County on July 22, 2006. Krukow was arrested in Fort Bragg on August 17, 2006. He initially told the arresting officers his name was Jim McDougall and claimed he had lost his identification when the officers asked to see it. In Krukow's wallet, police found a campground receipt made out to "MacDougall" and a piece of paper on which was written "James Eric MacDougall, 7-3-63, 43 yrs, Davenport, Iowa" followed by what appeared to be a Social Security Number.

*Krukow's Recorded Interrogation*

Santa Rosa police took custody of Krukow on August 17, 2006, and transported him to Santa Rosa, where he was interrogated. Police made a video recording of the interrogation, and a redacted version of it was played for the jury at trial. The video was also transcribed, and a redacted transcript was given to the jury.

The thrust of Krukow's statement to the police was that his mother's death had been an accident. He claimed he and his mother had argued, and in the course of the argument, he had raised a footlocker up in front of her but had lost his grip on it, and it had fallen and struck her on the head. He acknowledged that he was probably responsible for his mother's death.

Specifically, Krukow told the police his mother "was really on" him in the days leading up to her death. He said he and his mother fought frequently and admitted she had told him to leave her house before. He told her he wanted to call the police because he thought his neighbors were throwing "all night methamphetamine parties." Krukow claimed that when he started calling the police, his mother told him to get out of her house. He suggested that his problems with the neighbors were behind his mother's request that he leave.

Krukow said his mother wanted him to leave as soon as possible. He asked her if he could leave at night so his neighbors would not follow him. He told police he also asked her if he could leave some of his things behind in footlockers. He said he was bringing a footlocker into the house from the garage when he decided to speak to his mother again and ask whether he could stay in the backyard in a tent or trailer.

Krukow said he and his mother then argued, and he claimed repeatedly that she had swatted him with a newspaper or TV Guide. He said he became mad and frustrated and threw the footlocker up in front of him; he lost control of it, and then it hit his mother in the head. Although he claimed he did not know what he was trying to accomplish by lifting the footlocker up near his mother, he denied that he intended to hit her with it. He saw the trunk hit her and saw his mother fall back.

Appellant said he became scared and went to his bedroom expecting his mother to call the police. When nothing happened, he returned to the living room and saw a lot of blood and realized that his mother was not moving. He told police it looked like his mother was dead.

Krukow claimed he did not remember much of what happened next. He remembered getting out of bed and that it was dark. He left the house and went to a gas station where he accepted a stranger's offer of a ride to Ukiah. He took a bus from Ukiah to Fort Bragg. He claimed to have read about the fire and his mother's death in the newspaper. Krukow said he did not recall either buying a gas can from Kragen Auto Parts or setting or seeing the fires. He did admit, however, that he

had failed to summon help for his mother after hitting her. He also admitted giving a false name to the police when he was arrested.

*Inspection of the Footlocker*

Santa Rosa police discovered the footlocker with which Krukow claimed to have hit his mother in his bedroom. A police evidence technician inspected the footlocker, as well as three others found in the room, but she found no traces of blood on any of them. She sprayed the trunks with Blue Star, a blood enhancer used to detect diluted or wiped-off blood, but the enhancer revealed no blood. The technician did not know whether exposure to fire would affect the results of the blood enhancer test.

People v. Krukow, No. A118320, 2009 WL 499134, at *1-4 (Cal. Ct. App. Feb. 27, 2009).

## DISCUSSION

A.    Standard of Review

This court may entertain a petition for a writ of habeas corpus "in behalf of a person in custody pursuant to the judgment of a State court only on the ground that he is in custody in violation of the Constitution or laws or treaties of the United States."  28 U.S.C. § 2254(a).

The writ may not be granted with respect to any claim that was adjudicated on the merits in state court unless the state court's adjudication of the claim: "(1) resulted in a decision that was contrary to, or involved an unreasonable application of, clearly established Federal law, as determined by the Supreme Court of the United States; or (2) resulted in a decision that was based on an unreasonable determination of the facts in light of the evidence presented in the State court proceeding."  Id. § 2254(d).

"Under the 'contrary to' clause, a federal habeas court may grant the writ if the state court arrives at a conclusion opposite to that reached by [the Supreme] Court on a question of law or if the state court decides a case differently than

6

[the] Court has on a set of materially indistinguishable facts." <u>Williams v. Taylor</u>, 529 U.S. 362, 412-13 (2000).  "Under the 'reasonable application clause,' a federal habeas court may grant the writ if the state court identifies the correct governing legal principle from [the] Court's decisions but unreasonably applies that principle to the facts of the prisoner's case." <u>Id.</u> at 413.

"[A] federal habeas court may not issue the writ simply because the court concludes in its independent judgment that the relevant state-court decision applied clearly established federal law erroneously or incorrectly.  Rather, that application must also be unreasonable." <u>Id.</u> at 411.  A federal habeas court making the "unreasonable application" inquiry should ask whether the state court's application of clearly established federal law was "objectively unreasonable." <u>Id.</u> at 409.

The only definitive source of clearly established federal law under 28 U.S.C. § 2254(d) is in the holdings (as opposed to the dicta) of the Supreme Court as of the time of the state court decision.  <u>Id.</u> at 412; <u>Clark v. Murphy</u>, 331 F.3d 1062, 1069 (9th Cir. 2003).  While circuit law may be "persuasive authority" for purposes of determining whether a state court decision is an unreasonable application of Supreme Court precedent, only the Supreme Court's holdings are binding on the state courts and only those holdings need be "reasonably" applied. <u>Id.</u>

B.    <u>Claims & Analysis</u>

Petitioner raises five claims for relief under § 2254: (1) improper admission of evidence; (2) improper exclusion of evidence; (3) use of false evidence by the prosecution; (4) ineffective assistance of counsel; (4) California Court of Appeal's failure to follow state law and apply principles; and (5) cumulative error and prejudice.

1            1.     <u>Improper Admission of Evidence</u>

2            Petitioner claims that the admission of the testimony of his

3 neighbors and of a responding police officer violated his constitutional right to

4 due process.  Petitioner argues that the testimony should have been excluded

5 because it was irrelevant, improper character evidence and prejudicial.

6          The availability of federal habeas review of state court evidentiary rulings

7 is narrow and limited in scope.  It is not the province of federal habeas review to

8 reexamine state court rulings on the admissibility of evidence under state law.

9 <u>Estelle v. McGuire</u>, 502 U.S. 62, 67-68 (1991).  To obtain federal habeas relief,

10 the petitioner must show that the admission of the evidence either infringed upon

11 a specific federal constitutional or statutory provision applicable to the state

12 courts, or was so prejudicial that it denied him the fair trial guaranteed by due

13 process.  See <u>Pulley v. Harris</u>, 465 U.S. 37, 41 (1984); <u>Windham v. Merkle</u>, 163

14 F.3d 1092, 1103 (9th Cir. 1998).  The admission of evidence violates due process

15 only if: (1) there are no permissible inferences the jury may draw from the

16 evidence, and (2) the evidence is "of such quality as necessarily prevents a fair

17 trial."  <u>Jammal v. Van de Kamp</u>, 926 F.2d 918, 920 (9th Cir. 1991).

18          In order to obtain habeas relief on the basis of an evidentiary error, a

19 petitioner must also show that the constitutional error had "'a substantial and

20 injurious effect' on the verdict.'"  <u>Dillard v. Roe</u>, 244 F.3d 758, 767 n.7 (9th Cir.

21 2001) (quoting <u>Brecht v. Abrahamson</u>, 507 U.S. 619, 623 (1993)).

22          The California Court of Appeal rejected petitioner's claim, finding that the

23 challenged testimony was indeed relevant.  The court explained:

24             As the trial court recognized in its ruling, the testimony
         concerning the problems that Krukow was having with his neighbors

25          was relevant to whether "there was a conflict between Mr. Krukow and
         his mother and she asked him to leave because of this type of incident

26          or this specific incident." The testimony thus helped explain to the jury
         why Doris Krukow asked her son to leave her home. Krukow contends

27

28                                        8

that his mother's motive for evicting him was not relevant. But contrary to his assertions on appeal, the testimony also bore on *his* state of mind. If Krukow thought his neighbors were "jerks" and thought his mother's reasons for evicting him were unfair, this would explain why he might react angrily to his mother's decision. Moreover, as the People correctly argue, the testimony was relevant to "appellant's culpability and level of guilt." Where, as here, a focal point of the defense case is the degree of homicide, "[a]ny evidence tending to establish a *motive* on defendant's part . . . was thus plainly relevant."

Krukow, 2009 WL 499134, at *6 (citation omitted) (emphasis in original).

The court also explained that the neighbors' testimony was not improper character evidence:

Assuming solely for the purposes of our discussion that the challenged testimony constituted "character evidence," we nevertheless conclude that the trial court did not abuse its discretion in admitting it . . . .

. . .

Although evidence of a person's character in the form of specific instances of his prior conduct is "inadmissible when offered to prove his or her conduct on a specified occasion," it may properly be admitted "when relevant to prove some fact (such as motive, . . . intent, [or] absence of mistake or accident . . . ) other than his or her disposition to commit such an act."   As set forth above, the testimony regarding Krukow's problems with his neighbors was relevant to prove appellant's intent and thus bore on the degree of the offense.

Krukow, 2009 WL 499134, at *6-7 (citations omitted).

The court further rejected Petitioner's argument that the prejudicial effect of the testimony outweighed its probative value:

First, we note that the testimony to which Krukow objects is not "bad acts" evidence in the ordinary sense of the term. Generally, this category of evidence concerns proof of uncharged crimes used to demonstrate the defendant's propensity to commit the charged offense. Here, the evidence did not suggest that Krukow was involved in any criminal activity. As a result, the concerns about the highly prejudicial nature of prior crimes evidence are not implicated.

Second, contrary to Krukow's claims, the evidence concerning the problems he had had with his neighbors was quite limited. There was no testimony regarding the specifics of any of the problems, and the trial court forbade any "speculation as to what might have occurred in the neighborhood." The People introduced no evidence of any act committed by Krukow. The testimony given at trial established only that Krukow had had problems with his neighbors for a number of

9

years and that, in one instance, the police were called. It also showed Doris Krukow had been made aware of the problems and that she had assured a neighbor they would stop. Given the limited nature of this evidence, there is no basis upon which to conclude that the trial court erred in finding it more probative than prejudicial.

Third, the challenged testimony was not, as Krukow would have it, "a significant part of the prosecution's case." The witnesses from whom the testimony was elicited were asked only a few general questions about the friction between Krukow and his neighbors. Moreover, contrary to Krukow's claims, the prosecutor did not exploit the alleged bad-character aspect of this evidence. In fact, the prosecutor referred to it only twice during the course of his entire closing argument.

Krukow, 2009 WL 499134, at *7-8 (citations omitted).

The California Court of Appeal's rejection of Petitioner's improper admission of evidence claim was not contrary to, or involved an unreasonable application of, clearly established Supreme Court Precedent.  See 28 U.S.C. § 2254(d).  The Supreme Court "has not yet made a clear ruling that admission of irrelevant or overtly prejudicial evidence constitutes a due process violation sufficient to warrant issuance of a writ." Holley v. Yarborough, 568 F.3d 1091, 1101 (9th Cir. 2009).  Nor has it yet made a clear ruling that admission of propensity evidence constitutes a due process violation.  Alberni v. McDaniel, 458 F.3d 860, 866-67 (9th Cir. 2006).  Petitioner is not entitled to federal habeas relief on his claim that the admission of irrelevant and improper propensity evidence violated his right to due process.  See 28 U.S.C. § 2254(d).

Even if the Ninth Circuit's due process law applied here, petitioner would still not be entitled to federal habeas relief on this claim.  The California Court of Appeal reasonably concluded that there were permissible inferences the jury could draw from the testimony at issue.  See Jammal, 926 F.2d at 920.  The testimony established that Petitioner had problems with his neighbors, that the police were called in one instance and that Mrs. Krukow had been made aware of the problems.  The testimony was relevant to Mrs. Krukow's motive because it

10

helped explain to the jury why Mrs. Krukow might have evicted petitioner.  It also bore on petitioner's state of mind.  If petitioner was feuding with his neighbors, and if petitioner thought Mrs. Krukow was evicting him because of his neighbors, the testimony explains why he might have become angry.  It simply cannot be said that there were no permissible inferences that the jury could have drawn from the testimony.  See id.

Nor can it be said that the testimony was so highly inflammatory or prejudicial as to necessarily prevent a fair trial.  See id. at 920-21.  The trial court forbade any speculative testimony as to what might have occurred in the neighborhood.  There was no testimony regarding the specifics of any of the problems nor any particular acts committed by Petitioner.  The testimony at issue was not of such quality that it prevented a fair trial.  Accord Kealohapauole v. Shimoda, 800 F.2d 1463, 1464-66 (9th Cir. 1986) (videotape of victim's autopsy probative on issue of victim's cause of death and, although unpleasant, not inflammatory and therefore did not inject element of unfairness).

Finally, any constitutional error in admitting the challenged testimony cannot be said to have had a substantial and injurious effect upon the verdict.  See Brecht, 507 U.S. at 623.  The challenged testimony was not a significant part of the prosecution's case and, as set forth in detail below, substantial other evidence pointed toward Petitioner's guilt.

Petitioner admitted that he was responsible for his mother's death.  He also admitted that he did not seek help for his mother when he realized that his mother was dead after he "accidentally" struck her with a footlocker.  Instead, he simply went to his room and fell asleep.  Petitioner then left the scene by hitching a ride to a different city.  When Petitioner was arrested, he gave a fake name to the arresting officers.

The prosecution submitted evidence that Mrs. Krukow's death did not happen the way that Petitioner claimed it did, i.e., by accidentally dropping the footlocker on her. The autopsy report showed that Mrs. Krukow was hit with enough force to crack her skull in several places and the doctor who performed Mrs. Krukow's autopsy testified that although possible, it was not likely that the footlocker caused such injuries. The autopsy doctor testified that only if the footlocker was thrown forcibly, dropped off a balcony or traveled a long distance to develop velocity, could it have caused Mrs. Krukow's injuries. The autopsy doctor postulated that the footlocker might have caused Mrs. Krukow's injuries if her head were buttressed against something to absorb the impact. But when the firefighters discovered Mrs. Krukow's body, she was sitting on a couch about a foot away from the wall. Furthermore, the investigators did not find any blood, hair, tissue or dandruff on the footlocker to support Petitioner's story.

An investigation of the crime scene revealed that at least five separate gasoline fires had been set in Mrs. Krukow's house, with the largest one in the living room where her body was found. The investigators concluded that the fires had been set intentionally and after Mrs. Krukow died. About three to five feet from Mrs. Krukow's body, the firefighters discovered a melted gas can, which they believed was used to start the fires. A store clerk testified that on the afternoon of Mrs. Krukow's death, he sold a gas can to Petitioner and gave him a receipt. That receipt was later discovered in a trash can in Petitioner's bedroom.

In light of the substantial evidence pointing to Petitioner's guilt, it cannot be said that the admission of the testimony of the neighbors and of the responding police officer had a substantial and injurious effect upon the verdict. See id. Petitioner is not entitled to federal habeas relief on his improper admission of evidence claim.

12

2.       Improper Exclusion of Evidence

Petitioner claims that his constitutional rights to due process, equal protection and compulsory process were violated by the redaction of two portions of his video-recorded interrogation which was played to the jury.  The jury also received a redacted transcript of the interrogation.  The redacted portions related to Mrs. Krukow's mental health problems and her history of yelling at Petitioner. Petitioner argues that those statements explained, gave context to, had some bearing upon or had some connection with, the other portions of the video that the trial court admitted.

Generally speaking, the exclusion of evidence that is "highly relevant" to a defense contravenes due process.  See Green v. Georgia, 442 U.S. 95, 97 (1979) (finding due process violation when testimony excluded at trial "was highly relevant to a critical issue in the punishment phase of the trial" regardless of the state's hearsay rule); Chambers v. Mississippi, 482 U.S. 284, 302-03 (1973) (holding that exclusion of third-party testimony that was "critical evidence" violated due process).  In deciding whether the exclusion of evidence violates due process, a court balances the following factors: (1) the probative value of the excluded evidence on the central issue; (2) its reliability; (3) whether it is capable of evaluation by the trier of fact; (4) whether it is the sole evidence on the issue or merely cumulative; and (5) whether it constitutes a major part of the attempted defense.  Chia v. Cambra, 360 F.3d 997, 1004 (9th Cir. 2004); Drayden v. White, 232 F.3d 704, 711 (9th Cir. 2000).  The court must also give due weight to the state interests underlying the state evidentiary rules on which the exclusion was based.  See Chia, 360 F.3d at 1006 (finding California's interest in excluding reliable statements that were "extraordinarily" relevant to matter of petitioner's guilt or innocence was minimal, while importance to petitioner was immense).

Even if the exclusion of evidence amounts to a violation of due process, habeas relief may be granted only if the error had a substantial and injurious effect on the verdict.  See Brecht, 507 U.S. at 637.

a.   Statements About Mrs. Krukow's Mental Health

Petitioner contends that it was constitutional error for the trial court to redact the portion of his video-recorded interrogation where he spoke about his mother's mental health problems.

At the outset, the California Court of Appeal found that Petitioner forfeited his claim because he failed to comply with California's procedural rules for preserving issues for appeal.  The court explained:

> First, we may not reverse the jury's verdict on the ground that the trial court erroneously excluded evidence unless "the substance, purpose, and relevance of the excluded evidence was made known to the trial court by the questions asked, an offer of proof, or by any other means." Here, the trial court ordered the redactions because it concluded that Krukow's statements regarding his mother's mental health were not relevant. Although Krukow's trial counsel opposed the redactions and cited section 356, she did not explain to the trial court why the redacted statements were necessary to clarify the portions of the videotape and transcript that were admitted. Instead, she simply expressed "concerns as to the continuity of it all. Section 356 issues and keeping the flow going and a party seeking to introduce part of it does have to accept many other parts that are going to come with it." Having made no offer of proof to the trial court as to how the redacted statements "might correct any misimpressions allegedly created by the testimony and transcripts actually before the jury," Krukow cannot now raise this claim on appeal.

> Second, Krukow contends in this court that the redacted statements were admissible for three reasons, none of which were offered below.  FN5

> FN5. Appellant claims the redacted material would clarify his statement that "the family's never been real stable anyway, you know." He further claims the redacted statements gave context to other statements that "misleadingly portrayed Mrs. Krukow's decision to evict appellant as being based entirely upon the neighbors' complaints." Finally, Krukow argues that the redacted statements "gave some exculpatory context to appellant's assertion that Mrs. Krukow had swatted at him with a newspaper-type object just before the fatal blow had

14

been struck."

It is an elementary principle of appellate procedure that legal theories not raised in the trial court cannot be asserted for the first time on appeal.  Having failed to ask the trial court to admit the redacted statements on the grounds now urged in his brief, Krukow has forfeited this claim.

Krukow, 2009 WL 499134, at *11 (citations and internal alterations omitted).

The court of appeal then found that even if Petitioner had not forfeited his claim, it would fail on the merits.  The court explained:

From the arguments that Krukow makes on appeal for the admission of the redacted statements, it appears that he views the material as bearing on the issues of his mother's general disposition and on why she might have hit him with a newspaper just prior to her death. . . .  During his interrogation by the police, Krukow maintained that his mother's death had been an accident. He claimed that he had lost his grip on the footlocker and that struck his mother after slipping out of his hands. The redacted statements would have done nothing to explain Krukow's statements, since he did not claim that he struck his mother in anger or because of provocation. Indeed, in closing argument, his trial counsel claimed precisely the opposite, asserting that Doris Krukow was "*not* provoking him" by "swearing at him and swatting him with a newspaper." (Italics added.) We therefore conclude that the trial court did not abuse its discretion in redacting the statements.

Krukow, 2009 WL 499134, at *12 (footnote omitted).

1.    Procedural Default

A federal court will not review questions of federal law decided by a state court if the decision also rests on a state law ground that is independent of the federal question and adequate to support the judgment.

Coleman v. Thompson, 501 U.S. 722, 729-30 (1991).  In cases in which a state prisoner has defaulted his federal claims in state court pursuant to an independent and adequate state procedural rule, federal habeas review of the claims is barred unless the prisoner can demonstrate cause for the default and actual prejudice as a result of the alleged violation of federal law, or demonstrate that failure to consider the claims will result in a fundamental miscarriage of justice.  Id. at 750.

15

The Ninth Circuit has repeatedly held that California's contemporaneous objection rule, which requires objection at time of trial to preserve an issue for appeal, is an adequate procedural bar to federal habeas review.  See Inthavong v. Lamarque, 420 F.3d 1055, 1058 (9th Cir. 2005); Paulino v. Castro, 371 F.3d 1083, 1092-93 (9th Cir. 2004); Davis v. Woodford, 384 F.3d 628, 653-54 (9th Cir. 2004); Vansickel v. White, 166 F.3d 953, 957-58 (9th Cir. 1999).  The California Court of Appeal's invocation of the contemporaneous objection rule here accordingly precludes federal review of Petitioner's claim unless Petitioner can demonstrate cause for the default and actual prejudice as a result of the alleged violation of federal law, or demonstrate that failure to consider the claim will result in a fundamental miscarriage of justice.  See Coleman, 501 U.S. at 750.  Petitioner makes no such showing.  His claim is barred from federal habeas review.  See Davis, 384 F.3d at 653-54 (finding 6th Amendment claim procedurally barred where state appellate court found claim waived because petitioner failed to raise it below).

2.     Merits

Even if not procedurally defaulted, Petitioner's claim would fail on the merits because its rejection on the merits by the California Court of Appeal was not contrary to, or involved an unreasonable application of, clearly established Supreme Court precedent.  See 28 U.S.C. § 2254(d).  Petitioner's statements about his mother's mental health were not "critical" or "highly relevant."  Cf. Green, 442 U.S. at 97; Chambers, 482 U.S. at 302-03.  Throughout his trial, Petitioner maintained that his mother's death was an accident and never argued that he struck her because he was angry or provoked.  Put simply, the exclusion of Petitioner's statements about his mother's mental health did not violate due process because the statements had no probative value

on the central issues and constituted no major part of Petitioner's defense.  See

Chia, 360 F.3d at 1004.

Nor can it be said that the exclusion of Petitioner's statements about his

mother's mental health had a substantial and injurious effect on the verdict.  See

Brecht, 507 U.S. at 637.  As noted, Mrs. Krukow's mental health was

inconsequential to Petitioner's defense that he struck her with the footlocker on

accident.  Moreover, the evidence pointing to Petitioner's guilt was significant.

Petitioner is not entitled to federal habeas relief on this claim.

> b.    Statements About Mrs. Krukow's History of Yelling

Petitioner also claims that the redaction of the portion of his

interrogation involving his mother's history of yelling at him violated his federal

constitutional rights.

The California Court of Appeal found that Petitioner's claim suffered from

the same "procedural infirmities" as his earlier claim regarding the redaction of

references to his mother's mental health.  Krukow, 2009 WL 499134, at *14.  In a

nutshell, the claim had not been properly preserved for appeal.  Id.  And, as with

the earlier claim, the court added that even if Petitioner had not forfeited the

claim, it would fail on the merits.  The court explained:

> The remainder of the video recording made it clear that Krukow and his mother argued before she was killed. The jury also heard Krukow state that his mother yelled at him a lot while he was growing up and that she had cursed at him and called him names immediately before she was struck with the footlocker. The redacted statements added nothing to what the jury already knew. And as we made clear earlier, the statements were wholly irrelevant to Krukow's defense.

> . . . Whether Doris Krukow treated her son well or badly had no bearing on whether her death was the result of an accident, as appellant claimed.

Krukow, 2009 WL 499134, at *14-15.

/

17

For the same reasons discussed in connection with Petitioner's claim regarding the redaction of statements about his mother's mental health, he is not entitled to federal habeas relief on his claim regarding the redaction of statements regarding his mother's history of yelling at him. First, the claim is barred from federal habeas review because it was procedurally defaulted and Petitioner has not set forth any valid basis for excusing the default. See Coleman, 501 U.S. at 750. Second, it cannot be said that the rejection of the claim on the merits by the California Court of Appeal was contrary to, or involved an unreasonable application of, clearly established Supreme Court precedent. See 28 U.S.C. § 2254(d). Petitioner's statements about his mother's history of yelling at him were not critical or highly relevant. See Green, 442 U.S. at 97; Chambers, 482 U.S. at 302-03. Nor were they probative of any central issue or constitute a major part of his defense. See Chia, 360 F.3d at 1004. The exclusion of the statements regarding Petitioner's mother's history of yelling at him did not violate due process or have a substantial and injurious effect on the verdict. See Brecht, 507 U.S. at 637. Petitioner is not entitled to federal habeas relief on this claim.

### 3.   Prosecution's Use of False Evidence

Petitioner claims that the prosecution presented false evidence in violation of his federal constitutional rights. He specifically objects to the prosecution's representations that: (a) there was no TV Guide or newspaper in Mrs. Krukow's hands or close to where her body was found, and (2) Mrs. Krukow was sweet and gentle.

A conviction obtained through the use of testimony which the prosecutor knows or should know is perjured must be set aside if there is any reasonable likelihood that the testimony could have affected the judgment of the jury. United States v. Agurs, 427 U.S. 97, 103 (1976). The same result obtains when

the prosecutor, although not soliciting false evidence, allows it to go uncorrected when it appears.  Napue v. Illinois, 360 U.S. 264, 269 (1959).

To prevail on a claim based on Agurs/Napue, the petitioner must show that (1) the testimony (or evidence) was actually false, (2) the prosecution knew or should have known that the testimony was actually false, and (3) that the false testimony was material.  United States v. Zuno-Arce, 339 F.3d 886, 889 (9th Cir. 2003) (citing Napue, 360 U.S. at 269-71).  "Material" means that there is a reasonable likelihood that the false testimony or evidence could have affected the judgment of the jury.  Morris v. Ylst, 447 F.3d 735, 743 (9th Cir. 2006).

a.      TV Guide or Newspaper In Mrs. Krukow's Hands

Petitioner claims that the prosecution knowingly elicited false testimony from Detective Johnson in an effort to impeach Petitioner's post-arrest statement that his mother swatted at him with a TV Guide or newspaper before he raised the footlocker up in front of her and it slipped out of his hand. The claim is without merit.

At trial, the prosecution showed Detective Johnson photographs of the crime scene shortly after Mrs. Krukow's body was found.  These photographs were also shown to the jury as exhibits.  The prosecution then asked Detective Johnson if there was a TV Guide or newspaper in Mrs. Krukow's hands, or if one appeared to have fallen out of her hands.  Detective Johnson answered no.

Petitioner argues that Detective Johnson's testimony was false because it went against the police investigation reports which the prosecution knew about. He notes that one report indicated that a TV Guide was on a small round table next to Mrs. Krukow's body, and another report indicated that a badly burned newspaper had been found in the home but did not indicate precisely where. According to Petitioner, if the prosecution had imparted the contents of the police

19

reports to the jury, then they would have realized that the badly burned object on the table next to Mrs. Krukow in one of the photographs was a TV Guide.

Petitioner's claim amounts to no more than a difference of opinion on what the photographs and police reports that were available to both sides show. Just because the prosecution interpreted the same pieces of evidence differently than Petitioner does now does not mean that the prosecution presented false evidence. Petitioner has not shown that the challenged testimony was actually false, or that the prosecution knew or should have known that the testimony was false. See Zuno-Arce, 339 F.3d at 889. Nor has he shown that the testimony was material. See id. Whether Mrs. Krukow swatted at Petitioner with a TV Guide or newspaper had no bearing on Petitioner's defense because Petitioner claimed accident, not provocation. In view of this, and of the substantial evidence pointing to Petitioner's guilt, it cannot be said that there is a reasonable likelihood that the challenged testimony could have affected the jury's verdict. See Morris, 447 F.3d at 743. Petitioner is not entitled to federal habeas relief on this claim.

b.    <u>Mrs. Krukow's Sweet And Gentle Disposition</u>

Petitioner objects to the prosecution's portrayal of Mrs. Krukow as sweet and gentle, and as someone who would not have acted in the abusive way that Petitioner claimed she did. He also objects to the prosecution's representation to the court that there was no foundation for Mrs. Krukow's purported mental health problems. Petitioner argues that these portrayals were false and that the prosecution knew it. In support, he points to several prescriptions he claims were made out to Mrs. Krukow. Petitioner's claim is without merit.

Petitioner points to a photograph of Mrs. Krukow's kitchen cupboard showing three prescription bottles made out to her. One of the bottles is for

20

alprazolam, the generic name for Xanax, commonly used to treat anxiety.  The labels for the other two bottles cannot be read, but Petitioner speculates that they are also medications for Mrs. Krukow's mental health problems.  Petitioner also speculates that Mrs. Krukow was taking Prozac, commonly used to treat depression, based on a prescription that was found in Petitioner's bedroom.  The prescription does not show for whom the Prozac was prescribed, however.

The evidence Petitioner points to does not establish that the prosecution's portrayal of Mrs. Krukow as sweet and gentle, and as someone who would not have acted in the abusive way that Petitioner claimed she did, was false, much less that the prosecution knew or should have known that such portrayal was false.  See Zuno-Arce, 339 F.3d at 889.  Although the evidence shows that Mrs. Krukow was prescribed Xanax, it does not show why it was prescribed to her or if she exhibited any side effects from taking it.  Put simply, there is no evidence that Xanax or any other medication precluded Mrs. Krukow from being perceived as sweet and gentle, and as someone who would not have acted in the abusive way that Petitioner claimed she did.

The prosecution's portrayal of Mrs. Krukow as sweet and gentle was not material either.  In view of Petitioner's defense that he killed his mother accidentally, and the substantial evidence pointing to his guilt, it cannot be said that there is a reasonable likelihood that the challenged portrayal of Mrs. Krukow as sweet and gentle could have affected the jury's verdict.  See Morris, 447 F.3d at 743.  Petitioner is not entitled to federal habeas relief on this claim.

4.    Ineffective Assistance of Counsel

Petitioner claims he was denied his Sixth Amendment right to effective assistance of counsel when his counsel: (a) failed to request a limiting instruction regarding the neighbors' testimony, (b) failed to enforce one of the

1   court's evidentiary rulings, and (c) failed to debunk the prosecution's evidence

2   regarding the TV Guide/newspaper and Mrs. Krukow's sweet disposition.

3          To prevail on a claim of ineffective assistance of counsel, petitioner must

4   pass the two-part test set forth in Strickland v. Washington, 466 U.S. 668 (1984).

5   Petitioner must demonstrate that: (1) "counsel's representation fell below

6   an objective standard of reasonableness," and (2) "counsel's deficient

7   performance prejudiced the defense." 466 U.S. at 687-88.  Concerning the first

8   element, there is a "strong presumption that counsel's conduct falls within the

9   wide range of reasonable professional assistance." Id. at 689. Hence, "judicial

10  scrutiny of counsel's performance must be highly deferential." Id.  To fulfill the

11  second element, a "defendant must show that there is a reasonable probability

12  that, but for counsel's unprofessional errors, the result of the proceeding would

13  have been different." Id. at 694.  A reasonable probability is a probability

14  sufficient to undermine the confidence in the outcome.  Id.

15                    a.    Failure to Request Limiting Instruction

16                 Petitioner claims that his counsel was ineffective for failing

17  to request a limiting instruction regarding his neighbors' testimony about the

18  problems Petitioner was having with them.  Petitioner argues that this testimony

19  was "bad acts" evidence and that, as such, he was entitled to a limiting instruction

20  informing the jury it could not use the evidence to conclude that Petitioner had

21  bad character or was disposed to commit a crime.

22          The California Court of Appeal rejected Petitioner's claim on the merits.

23  The court explained:

24

25       As discussed above, the testimony about Krukow's problems with his
         neighbors was very limited in scope, and none of it suggested Krukow
26       had committed any sort of criminal misconduct that led to either an
         arrest or conviction. Krukow's trial counsel may have decided this
27       testimony was simply not terribly important to the issues in the case.

28                                      22

Indeed, she suggested as much in closing argument, telling the jury "there's a lot of witnesses paraded in here, firefighters, neighbors, bus drivers . . . . None of them help you with your ultimate challenge, and that's to decide, what's the intent?" (See People v. Bunyard (1988) 45 Cal.3d 1189, 1216 [noting that "a strong indication of defense counsel's reasoning appears in closing argument to the jury"].) If trial counsel concluded the testimony was somewhat damaging but not terribly consequential, she may not have wished to draw further attention to it by requesting a limiting instruction. Because there may very well have been sound tactical reasons for not requesting the instruction, we conclude that on this record, Krukow has failed to establish that his trial counsel's performance fell outside " 'the wide range of reasonable professional assistance.' " ( People v. Lucas, supra, 12 Cal.4th at p. 437.) We therefore reject his claim of ineffective assistance of counsel.

Krukow, 2009 WL 499134, at *10 (citations omitted).

The state court's rejection of Petitioner's ineffective assistance of counsel claim cannot be said to have been an objectively unreasonable application of Strickland. See 28 U.S.C. § 2254(d). In view of the limited scope of the neighbors' testimony and the relatively minimal role that it played in the prosecution's theory of the case, it was within the "objective standard of reasonableness" for counsel not to request a limiting instruction. See Strickland, 466 U.S. at 689. And for essentially the same reason, it cannot be said that counsel's failure to request the limiting instruction prejudiced Petitioner – there is no reasonable probability that, but for counsel's failure to request a limiting instruction, the result of the proceeding would have been different. See id. at 694. Petitioner is not entitled to federal habeas relief on this ineffective assistance of counsel claim.[1]

---

[1]Petitioner also claims that he was denied his due process right to a fair trial when the trial court failed sua sponte to give a limiting instruction on the neighbors' testimony. The claim is without merit. For essentially the same reasons noted above, it cannot be said that failure to give sua sponte a limiting instruction in connection with the neighbors' testimony had a substantial and injurious effect or influence in determining the jury's verdict. See Brecht, 507 U.S. at 623.

1        b.       Failure to Enforce Court's Evidentiary Ruling

2                 Petitioner claims that his counsel was ineffective for failing

3    to enforce one of the trial court's evidentiary rulings.  The claim is without merit.

4                 The record shows that the trial court found that one of the statements

5    Petitioner made about his mother's mental health problems during his video-

6    recorded interrogation should be admitted because it was intertwined with other

7    important and relevant information.  But during trial the statement was edited out

8    of the video and transcript, and Petitioner's counsel did not object.

9                 The California Court of Appeal agreed that the statement should not have

10   been redacted, but found no prejudice on the ground that "it is not reasonably

11   probable that inclusion of the redacted statement would have affected the jury's

12   finding of guilt." Krukow, 2009 WL 499134, at *13.  The court explained:

13               Even if the jury had heard Krukow's opinion that his mother
             suffered from depression and was on "psych meds," it would have
14           added nothing to Krukow's defense. As noted earlier in our opinion,
             Krukow claimed to have killed his mother by accident. The redacted
15           statement was wholly irrelevant to that defense. It might have had some
             bearing on the case if he had claimed that he killed her out of anger or
16           because he was provoked by what he felt were her irrational actions.
             But Krukow maintained that the footlocker simply slipped from his
17           hands, and thus this statement would not have served to explain or
             mitigate his actions. Moreover, it is not reasonably probable that this
18           testimony would have countered the powerful evidence of Krukow's
             guilt. The autopsy revealed that he had struck her forcefully enough to
19           crack her skull in several places. He admitted that he did not seek help
             for his mother after striking her, and instead simply returned to his
20           room and fell asleep. In addition, the redacted statement could have had
             absolutely no relevance to Krukow's actions following his mother's
21           death. There was evidence showing he purchased gasoline and set fire
             to her house, which the jury could reasonably interpret as an attempt to
22           destroy evidence. He then fled the scene leaving her body to burn. In
             short, appellant suffered no conceivable prejudice from his counsel's
23           failure to correct this one improper redaction.

24   Krukow, 2009 WL 499134, at *14.

25                The California Court of Appeal's rejection of petitioner's ineffective

26   assistance of counsel claim cannot be said to have been an objectively

27

28                                            24

unreasonable application of <u>Strickland</u>.  <u>See</u> 28 U.S.C. § 2254(d).  Because Mrs. Krukow's mental health was inconsequential to Petitioner's defense and the evidence pointing to his guilt was substantial, it simply cannot be said that there is a reasonable probability that, for counsel's failure to object to the redaction of Petitioner's statement, the result of the proceeding would have been different. <u>See</u> <u>Strickland</u>, 466 U.S. at 694.  Petitioner is not entitled to federal habeas relief on this ineffective assistance of counsel claim.

c.      <u>Failure to Debunk the Prosecution's Evidence</u>

Petitioner claims that his counsel was ineffective for failing to expose the purported falsity of the prosecution's representations that there was no TV Guide or newspaper in Mrs. Krukow's hands when her body was found and that Mrs. Krukow was sweet and gentle.  Petitioner argues that counsel should have elicited the police reports indicating that a TV Guide or newspaper was found near Mrs. Krukow's body and evidence showing that Mrs. Krukow was taking prescription medications for her mental health.

Petitioner has not shown that counsel's performance was deficient for failing to debunk the prosecution's allegedly false representations because Petitioner has not shown that the representations were actually false.  As explained in connection with Petitioner's false evidence claims, Petitioner's allegations amount to no more than a difference of opinion in how the evidence could be perceived.  But, more importantly, Petitioner's claim fails because he cannot show that counsel's alleged failure to debunk the prosecution's representations by eliciting the police reports and evidence of his mother's prescriptions prejudiced his defense.  Again, Petitioner's defense was that he killed his mother accidentally and not that he was provoked by her swatting at him with a TV Guide or newspaper, or by her abusive behavior.  In view of this,

and of the substantial evidence pointing to Petitioner's guilt, it cannot be said that there is a reasonable probability that, but for counsel's failure to debunk the prosecution's representations that there was no TV Guide or newspaper in Mrs. Krukow's hands when her body was found and that Mrs. Krukow was sweet and gentle, the outcome of the proceedings would have been different.  See Strickland, 466 U.S. at 694.  Petitioner is not entitled to federal habeas relief on this ineffective assistance of counsel claim.

5. California Court of Appeal's Failure to Follow State Law

Petitioner claims that the California Court of Appeal's adjudication of his claims on direct appeal violated his due process rights.  Among other things, Petitioner argues that the state court failed to follow state law and apply state standards and governing principles, and misunderstood California Government Code 68081 regarding preserving issues for appeal.

Petitioner's claim is without merit because it is well established that federal habeas corpus relief is unavailable for alleged error in the state post-conviction review process.  See Franzen v. Brinkman, 877 F.2d 26, 26 (9th Cir. 1989).   And it its also unavailable for violations of state law or for error in the interpretation and/or application of state law, as Petitioner claims.  See Estelle v. McGuire, 502 U.S. 62, 67-68 (1991); Peltier v. Wright, 15 F.3d 860, 861-62 (9th Cir. 1994); see, e.g., Little v. Crawford, 449 F.3d 1075, 1082 (9th Cir. 2006) (claim that state supreme court misapplied state law or departed from its earlier decisions does not provide a ground for habeas relief).

6. Cumulative Error and Prejudice

Petitioner claims that the cumulative effect of the alleged errors mandates federal habeas relief.  The claim is without merit.

/

1       The Ninth Circuit has held that the cumulative effect of several trial errors

2   may prejudice a defendant so much that his conviction must be overturned. See

3   Alcala v. Woodford, 334 F.3d 862, 893-95 (9th Cir.2003); Thomas v. Hubbard,

4   273 F.3d 1164, 1179-81 (9th Cir.2002).  But this is not one of those cases.  In

5   view of the substantial evidence pointing to Petitioner's guilt in this case, it

6   cannot be said that the cumulative effect of the alleged trial errors so infected the

7   trial with unfairness as to make the resulting conviction a denial of due process.

8   Cf. Alcala, 334 F.3d at 893-95 (reversing conviction where multiple

9   constitutional efforts hindered defendant's efforts to challenge every important

10  element of proof offered by prosecution); Thomas, 273 F.3d at 1179-81

11  (reversing conviction based on cumulative prejudicial effect of (a) admission of

12  triple hearsay statement providing only evidence that defendant had motive and

13  access to murder weapon; (b) prosecutorial misconduct in disclosing to the jury

14  that defendant had committed prior crime with use of firearm; and (c) truncation

15  of defense cross-examination of police officer, which prevented defense from

16  adducing evidence that someone else may have committed the crime and

17  evidence casting doubt on credibility of main prosecution witness).  Petitioner is

18  not entitled to federal habeas relief on his claim of cumulative error/prejudice.

19  /

20  /

21  /

22  /

23  /

24  /

25  /

26  /

27

28                           27

1

**CONCLUSION**

2          After a careful review of the record and pertinent law, the court is satisfied

3    that the petition for a writ of habeas corpus must be DENIED.

4          Pursuant to Rule 11 of the Rules Governing Section 2254 Cases, a

5    certificate of appealability (COA) under 28 U.S.C. § 2253(c) is DENIED because

6    Petitioner has not demonstrated that "reasonable jurists would find the district

7    court's assessment of the constitutional claims debatable or wrong."  Slack v.

8    McDaniel, 529 U.S. 473, 484 (2000).

9          The clerk shall enter judgment in favor of respondent and close the file.

10   SO ORDERED.

11   DATED:   Nov. 19, 2010                    _____
                                               CHARLES R. BREYER
12                                             United States District Judge

13

14

15

16

17

18

19

20

21

22

23

24

25

26

27          G:\PRO-SE\CRB\HC.09\Krukow, S1.merits.wpd

28                                    28